## JANNEY v. BLACKWELL.

(Filed May 23, 1905.)

*Vacant Lands—Grants—Entries—Registration—Priority—Rights of Grantees.*

1. Under section 2751 of The Code, all vacant and unappropriated lands belonging to the State, with certain well defined exceptions, may be entered and grant taken therefor.

2. By making the entry as prescribed by law the enterer does not acquire any title to the land but only the right to call for a grant upon compliance with the statute, and the grant when issued relates to the entry and vests the title in the grantee.

3. If a person lay an entry upon and procure a grant for land covered by a grant, he acquires no title thereto as the State by the senior grant parted with its title.

4. If land be open to entry and a grant be issued therefor, such grant cannot be attacked collaterally for fraud, irregularity or other cause, but if the land be not subject to entry, the grant is void and may be attacked collaterally.

5. Under Chapter 40, Laws 1893, extending the time for the registration of grants, with a proviso that nothing therein contained shall have the effect to divest any rights, titles, or equities in or to land covered by such grants, acquired by any person from the State by any grants issued since such grants were issued, the plaintiff who claimed under a grant issued in 1875 and registered in 1878, acquired no right, title or equity in the land as against a grant issued to the defendant in 1848 and recorded in 1895, where neither grantee had actual possession of the land.

CONTROVERSY without action by Joseph W. Janney and others against Nannie G. Blackwell, heard by *Judge James L. Webb,* at the February Term, 1905, of the Superior Court of CALDWELL County.

This is a controversy without action submitted to the court upon facts agreed for the purpose of settling the matters in difference between the plaintiffs and the defendant under section 567 of The Code. The plaintiffs claim the land in controversy under grant No. 883 to W. D. Sprague for 640 acres dated December 29, 1875, and registered in the office of the Register of Deeds of Caldwell County, October 31, 1878, and by *mesne* conveyances making a complete chain of title to the plaintiffs, all of which are in due form and registered. The defendant claims title to the land under Grant No. 265 to Wilson Foster for 100 acres dated December 23, 1848, and registered in the office of the Register of Deeds of Caldwell County, April 5, 1895, and by *mesne* conveyances making a complete chain of title to the defendant, all of which are in due form and registered. It is admitted that both grants covered the land in controversy, and it is also agreed that neither the plaintiffs nor the defendants nor those under whom they claim title have ever held any possession of the land in controversy, or any part of it, included in either of the said grants, except the recent entry by the defendant for the purpose of cutting the timber trees therefrom.

The court being of opinion that upon the facts agreed the plaintiffs ought not to recover, rendered judgment for the defendant. Plaintiffs excepted and appealed.

*L. D. Lowe* for the plaintiffs.
*Mark Squires* for the defendant.

CONNOR, J., after stating the facts: The statutes in force in this State for more than a century have permitted "all

vacant and unappropriated lands belonging to the State"
with certain well defined exceptions, to be entered and grants
taken therefor.   Code, section 2751.   "To be subject to en-
try under the statute, lands must be such as belong to the
State and such as are vacant and unappropriated."   *Hall v.
Hollifield,* 76 N. C., 476; *State v. Bevers,* 86 N. C., 588.
By making the entry as prescribed by law the enterer does
not acquire any title to the land, but only a "pre-emption·
right" or, as it is sometimes called, an "inchoate equity," or
right to call for a grant upon compliance with the. statute.
The grant, when issued, relates to the entry and vests the ti-
tle in the grantee.   The land when granted is no longer sub-
ject to entry—as "vacant and unappropriated lands."
*Featherston v. Mills,* 15 N. C., 596; *Hoover v. Thomas,* 61
N. C., 184; *State v. Bevers, supra; Newton v. Brown,* 134
N. C., 439.   It follows, therefore, that if one lay an entry
upon, and procure a grant for land covered by a grant, he
acquires no title thereto, for the reason that the State has by
the senior grant parted with its title. *Stanmire v. Powell,* 35
N. C., 312. If the land be open to' entry and a grant be issued
therefor, such grant may not be attacked collaterally for
fraud, irregularity or other cause.   This can be done only by
the State or by pursuing the provisions of section 2786 of The
Code.   But if the land be not subject to entry, the grant is
void, and may be attacked collaterally.   Prior to 1885, the
statutes provided that all grants, deeds, etc., be registered in
the county wherein the land was situated within two years
from the date thereof.   With one or two omissions, the legis-
lature uniformly extended the time for registration for two
years.   This court with equal uniformity held that such in-
struments, when registered within two years from their date
or within the extended period, were good and valid for all
purposes from their date by relation.   Referring to grants, it
was said in *Hill v. Jackson,* 31 N. C., 333, that "the passage
of the acts *   *   * prolonging the time within which grants

shall be registered in the county, has practically the effect of rendering nugatory that clause in them.   *   *   *   The grants then may be registered at any time, if at that time there be any law authorizing the act.   *   *   *   If the registration of the grant was legal, then it must have the effect of relating back; this is a necessary consequence and daily recognized in our practice." The same doctrine prevailed in regard to deeds. *Walker v. Collraine,* 41 N. C., 79; *Phifer v. Barnhart,* 88 N. C., 333. At the session of 1885 the legislature enacted a statute which worked a radical change in regard to the registration of deeds. Chapter 147, Laws 1885, declares that no deed, etc., shall be valid at law to pass any property as against creditors or purchasers for value, but from registration. No time was fixed within which such instruments were to be recorded. From that time it became unnecessary to pass the usual act extending the time for registration of deeds. The legislature at that session and until 1893 failed to extend the time for registering grants. In *Wyman v. Taylor,* 124 N. C., 426, this court held that Chapter 147, Laws 1885, did not apply to grants; hence from 1885 until 1893 there was no statute in force in this State authorizing the registration of grants after the expiration of two years from their date. By section 2779 of The Code they were required to be registered within two years. During the period between 1885 and 1893 there was no statute in force permitting the plaintiff to register the grant. By Chapter 40, Laws 1893, it was provided that grants theretofore made which were required to be registered "may be registered in the counties in which the lands lie respectively at any time or times within two years from the first day of January, 1894, next ensuing, notwithstanding the fact that such specified times have already expired, and all such grants heretofore registered after the expiration of such specified time or times shall be taken and treated as if they had been registered within such specified time or times;

provided that nothing herein contained shall be held or have the effect to divest any rights, titles or equities in or to the land covered by such grants, or any of them, acquired by any person or persons from the State of North Carolina, by or through any entry or entries, grant or grants, made or issued since such grants were respectively issued, or of those claiming through or under such subsequent entry or entries, grant or grants." The plaintiffs insist that the language of the proviso prevents the operation of the senior grant from relating back to its date, and gives the grant of 1876, under which they claim, priority. The question is thus presented, what "right, title or equity" did the grant of 1875 confer upon the grantee? As we have seen, the land at the time of the issuing of the grant was not subject to entry, and therefore the grantee acquired no right, title or equity in the land as against the prior grantee. It is well settled that where language is used in a statute which has a well defined legal meaning, the legislature will be presumed to have used the language with reference to such meaning. The plaintiff must therefore establish the proposition that he had some legal right or title to the land or some equity therein by virtue of his grant. It is not to be doubted that the legislature had the power to impose upon the persons registering their grants after the time provided therefor had expired, the condition that they should do so, subject to junior grants which had been registered. The registration of a grant is not necessary to give it validity for the purpose of passing title. 24 A. & E. Enc. (2nd Ed.), 116. It will be noted that there is a marked difference in the language of the statute requiring the registration of deeds (section 1245 of The Code and Acts 1885, ch. 147), and that requiring the registration of grants. The first declares that "no· deed shall be good and available  *  *  *  ," whereas the second directs that the grant be recorded.

We therefore conclude that in view of the facts set out in

JANNEY *v.* BLACKWELL.

the record, the plaintiff had not, at the time of the registration of the grant of 1848, acquired by the grant of 1875 any "right, title or equity" as against the senior grant, which gave it priority. Neither grantee had actual possession of the land. The legal-title vesting in the first grantee drew the constructive possession which continued until there was an ouster. It appears that the plaintiff had never taken possession; therefore, the possession is by operation of law in the defendant by virtue of the senior grant. It may be suggested that the construction which we have placed upon the proviso of the Act of 1893 practically emasculates it—gives it no operative force. If the defendant had gone into actual possession of the land, thereby ousting the senior grant, and remained in possession for seven years, he would have acquired title. However this may be, we are not at liberty to give to the words of the proviso any other or larger operation than they have in the law. The act does not profess to confer any right, title or equity, but to protect such as the junior grantee had at the time of its passage. As he had none as against the senior grantee, he does not come within its provisions.

We are of opinion that the judgment of the court below was correct, and must therefore be affirmed.

Affirmed.